IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

APPLE INC.,                            )
                                       )
              Plaintiff,               )
      v.                               )        1:24-cv-284 (LMB/LRV)
                                       )
ZERODENSITY YAZILIM ANONIM             )
SIRKETI,                               )
                                       )
              Defendant.               )

<u>MEMORANDUM OPINION</u>

Before the Court are the parties' cross-motions for summary judgment in a civil action

involving plaintiff Apple Inc.'s ("plaintiff" or "Apple") effort to reverse the United States

Trademark Trial and Appeal Board's ("TTAB") decision that sustained defendant ZeroDensity

Yazilim Anonim Sirketi's ("defendant" or "ZeroDensity") opposition to Apple's trademark

applications for "REALITY COMPOSER" and "REALITY CONVERTER"[1] ("Apple's marks"

or "marks"). The proposed marks relate to two downloadable computer software products used

by developers working on other software applications to produce and/or edit three-dimensional

effects in augmented reality ("AR"). The TTAB found that Apple's marks were descriptive of

the goods and services identified in the applications and therefore were not eligible for trademark

protection.[2] Plaintiff did not argue secondary meaning before the TTAB but does so in this

litigation. Finding that oral argument will not advance the decisional process, the motions will

_____

[1] All caps will be used when the words refer to the trademarks, and regular font will be used
when they refer to the products.

[2] The TTAB did not reach ZeroDensity's likelihood of confusion claim, but the parties in this
litigation have stipulated that the marks do not raise a likelihood of confusion issue. <u>See</u> [Dkt.
No. 48] at 6.

be decided on the papers submitted by the parties. For the reasons that follow, plaintiff's motion will be granted, defendant's motion will be denied, and judgment will be entered in favor of plaintiff.

## I. BACKGROUND

### A. **Undisputed Facts**[3]

Since the early 1990s, Apple, a California corporation, has organized a platform now called the Apple Developer Program, from which over 34 million registered software developers, many of whom are in the United States, can obtain information and tools for developing software applications compatible with Apple operating systems. Pl. SUF ¶¶ 2–4. For decades, Apple has hosted an annual Worldwide Developers Conference ("WWDC"), a week-long gathering covered by media worldwide during which Apple presents innovations in its products and services. Id. ¶ 5.

ZeroDensity is a Turkish entity, which has conducted business in the United States since 2016, and has one registered mark—"REALITYHUB"—and pending trademark applications for "REALITY ENGINE" and "REALITY KEYER." Joint Stip. ¶¶ 13, 31, 33–34. REALITY ENGINE is "a broadcast compositing system" that companies can use to add "effects to broadcasts through green and blue screens" in their virtual studios. Id. ¶ 35; Pl. SUF ¶ 59.

On June 3, 2019, during the 2019 WWDC keynote address, Apple announced a new developer product called "Reality Composer," which has been continuously offered to developers since its release. Pl. SUF ¶¶ 7, 21. On September 10, 2019, Apple applied for

---

[3] The following facts come from the parties' joint stipulation of undisputed facts ("Joint Stip.") and from the facts in plaintiff's Statement of Undisputed Facts ("Pl. SUF") that were not disputed by defendant in its opposition. Defendant's statement of undisputed facts does not add any relevant evidence.

federal registration of the REALITY COMPOSER mark (Application Serial No. 88/607,577, hereinafter the "'577 Application") based on its use of the mark in commerce since June 3, 2019, claiming a priority date of March 7, 2019. Joint Stip. ¶ 1. The '577 application referred to the 009 class of goods for which REALITY COMPOSER applied and described the goods as "[d]ownloadable computer software used in developing other software applications; downloadable application development software; downloadable computer software providing a library of virtual objects for use in developing other software applications; downloadable computer software used in producing animation, audio, and three-dimensional effects for use in other software applications." [Dkt. No.44-8] at 2. Reality Composer does not let users create reality or design objects that then exist in the real world. Pl. SUF ¶ 13. No other company uses the words "Reality Composer" as a brand name for a software product. Id. ¶ 16. The '577 Application was published for opposition on August 4, 2020. Defendant filed its opposition on December 2, 2020. Id. ¶ 3.

During the 2023 WWDC keynote address, Apple introduced Reality Composer Pro as a developer tool for previewing and preparing 3D content for Apple's visionOS operating system. Id. ¶¶ 22–23. The keynote address received more than 19 million views online. Id. ¶ 23.

Apple promotes both the Reality Composer and Reality Composer Pro products through its webpages, WWDC sessions, YouTube page, product articles, dedicated forums, and news releases. Id. ¶ 24. In its promotional materials, Apple consistently presents "REALITY COMPOSER" in the same capitalization and positioned in the same manner as other Apple product names. Id. ¶ 25. Apple already owns two federal trademark registrations for a suite of developer tools called REALITYKIT, in which it offers Reality Composer as a product. Id. ¶ 26. Media outlets including CNN, Forbes, CNET, TechCrunch, Medium, TheVerge, VentureBeat,

3

and Computerworld have collectively issued dozens of articles about the Reality Composer and

Reality Composer Pro software. Id. ¶ 29.

    In January 2020, Apple announced, and began using, Reality Converter as a companion

product to Reality Composer. Id. ¶ 30. On March 30, 2020, Apple applied for federal

registration of the REALITY CONVERTER mark (Application Serial No. 88/852,639,

hereinafter the "'639 Application") based on its use in commerce since January 13, 2020,

claiming a priority date of October 2, 2019. Joint Stip. ¶ 4. The '639 application also referred to

the 009 class of goods and described the goods as "[d]ownloadable computer software used in

developing other software applications; downloadable application development software;

downloadable computer software used in editing, customizing, and producing three-dimensional

effects." [Dkt. No. 50-9] at 2. The '639 Application was published for opposition on June 30,

2020, and defendant filed its opposition on December 28, 2020. Joint Stip. ¶¶ 6–7.

    On August 31, 2022, the TTAB consolidated defendant's two oppositions, and on

December 22, 2023 it sustained defendant's oppositions, cancelling the registrations of the marks

on the basis of finding them descriptive. Pl. SUF ¶¶ 8, 50. Plaintiff has appealed the TTAB's

decision to this Court, seeking in Count I a reversal of the December 22, 2023 TTAB decision

and an order requiring the registration of Apple's REALITY COMPOSER and REALITY

CONVERTER marks, and in Count II requesting a declaratory judgment affirming the validity

and enforceability of the two marks and finding a lack of a likelihood of confusion between its

marks and ZeroDensity's marks. [Dkt. No. 1].[4]

---

[4] The parties have stipulated to this Court's subject-matter jurisdiction under 15 U.S.C. § 1071(b) and 28 U.S.C. § 1331, personal jurisdiction over ZeroDensity under 15 U.S.C. § 1071(b)(4), and proper venue under 28 U.S.C. § 1391(c)(3). Joint Stip. ¶¶ 14–16.

## II. DISCUSSION

### A. <u>Standard of Review</u>

A trademark applicant "dissatisfied with the decision" of the USPTO has two remedies under the Lanham Act: either appeal the decision to the United States Court of Appeals for the Federal Circuit, <u>see</u> 15 U.S.C. § 1071(a), or file a civil action in federal district court, <u>see</u> 15 U.S.C. § 1071(b).  Under § 1071(a), an appeal to the Federal Circuit is taken "on the record" before the USPTO, <u>id.</u> § 1071(a)(4), and the USPTO's factual findings will be upheld if they are supported by "substantial evidence," <u>see, e.g.</u>, <u>Recot, Inc. v. Becton</u>, 214 F.3d 1322, 1327 (Fed. Cir. 2000); however, in a civil action under § 1071(b), "the district court reviews the record de novo and acts as the finder of fact." <u>Swatch AG v. Beehive Wholesale, LLC</u>, 739 F.3d 150, 155 (4th Cir. 2014).  In a § 1071(b) action, the district court may consider evidence that was not before the USPTO.

In this action, although the parties engaged in discovery, Apple provided far more new evidence than ZeroDensity.  Among the new evidence produced by Apple were four expert reports.  Itamar Simonson (a Stanford University professor of marketing) conducted consumer surveys and concluded that consumers do not understand Apple's marks as descriptive terms. Phillip M. Carter (a Florida International University professor of linguistics) explained that ordinary speakers of American English would not readily understand Apple's marks as describing the corresponding products.  Ashlee Humphreys (a Northwestern University professor of market and consumer research) concluded that Apple uses its marks as a brand name and found that no competitor uses any variation of Apple's marks.  Finally, Garry Kitchen (a software development expert with over 35 years of experience running software development companies) opined that Apple's marks are neither used descriptively nor understood in the field of software engineering as being descriptive.  Pl. SUF ¶¶ 61, 71, 73–74, 83, 86, 105–08.

5

Defendant did not produce any expert evidence and only deposed Humphreys.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and a "fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial . . . by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)).  In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  When there are cross-motions for summary judgment, a court "consider[s] and rule[s] upon each party's motion separately and determine[s] whether summary judgment is appropriate as to each." Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999).

## B. Analysis

The Court must always ensure that it has subject matter jurisdiction over a civil action. Despite stipulating to subject matter jurisdiction,[5] plaintiff argues in the last paragraph of its Motion for Summary Judgment that defendant lacks standing to oppose registration of the marks

---

[5] See Joint Stip. ¶ 14 ("This Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1071(b), which provides that a party dissatisfied with a final decision of the TTAB may institute a civil action in a federal district court challenging such decision.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.").

at issue because it "has no cognizable interest in whether the USPTO registers the marks and will suffer no damage from registration." [Dkt. No. 44] at 36. In support of this argument, plaintiff asserts that defendant "has never used the marks at issue; has not shown plans to; does not use 'composer,' or 'converter'; and the REALITY COMPOSER and REALITY CONVERTER marks have not blocked [ZeroDensity] from using its marks anywhere in the United States." Id. (emphasis in original); see also Pl. SUF ¶¶ 57–59.

Defendant counters that it has standing for two reasons. First, defendant will be harmed if a decision by the TTAB in its favor is reversed. See Pro-Football, Inc. v. Blackhorse, 62 F. Supp. 3d 498, 504 (E.D. Va. 2014) ("Defendant's standing before the TTAB necessarily establishes sufficient interest in an appeal or review of the TTAB's determination of the petition."). The TTAB concluded that ZeroDensity had standing because its "goods are sufficiently related to [Apple's] to demonstrate an interest in using the terms in the proposed marks." Zerodensity Yazilim Anonim Sirketi, No. 91266285, 2023 WL 11758712, at *3 (Dec. 22, 2023). Second, defendant points to plaintiff's challenge to defendant's REALITY KEYER application in which plaintiff argues that defendant's REALITY-formative mark is descriptive. The Court finds that both reasons—defendant's interest in an opposition in which it prevailed and for which the TTAB found standing, and plaintiff's similar opposition to defendant's mark— suffice to establish defendant's standing in this civil action.

With the jurisdictional issue resolved, the first substantive issue in this trademark dispute is whether REALITY COMPOSER and REALITY CONVERTER are descriptive marks or whether they are suggestive and therefore registrable as being "inherently distinctive." The second issue is whether they have acquired secondary meaning in the minds of the relevant

7

consumer base, in which case the marks are registrable regardless of whether they are descriptive.

   1. Legal Standard

   The Lanham Act identifies four categories of marks. "Arrayed in an ascending order which roughly reflects their eligibility [for] trademark status and the degree of protection accorded, these classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976). "A generic mark refers to the genus or class of which a particular product is a member and can never be protected." Ashley Furniture Indus., Inc. v. SanGiacomo N.A., 187 F.3d 363, 369 (4th Cir. 1999). Examples of generic marks include "Light Beer" for ale-type beverages and "Thermos" for vacuum-insulated bottles. Sara Lee Corp. v. Kayser–Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996). A descriptive mark "describes a function, use, characteristic, size, or intended purpose" of the product, such as "5 Minute" glue and the "Yellow Pages" telephone directory. Id. "Marks that are merely descriptive are accorded protection only if they have acquired a secondary meaning [also called 'acquired distinctiveness'], that is, if in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." Id. (internal citations omitted). Suggestive marks, such as "Coppertone" for sunscreen and "Orange Crush" for orange flavored soda, "connote, without describing, some quality, ingredient, or characteristic of the product." Id. Marks that are "comprised of words in common usage" but "do not suggest or describe any quality, ingredient, or characteristic of the goods they serve, are said to have been arbitrarily assigned." Id. Examples of arbitrary marks include "Tea Rose" brand flour and "Apple" for computers. Id. Lastly, fanciful marks are "in essence, made-up words expressly coined for serving as a trademark," such as "Clorox" for a bleach product and "Kodak" for photography-related products. Id. Because the "intrinsic

8

nature" of suggestive, arbitrary, and fanciful marks "serves to identify a particular source of a product," these categories "are deemed inherently distinctive and are entitled to protection." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992).

To determine if a mark is suggestive, courts primarily apply the "degree of imagination" test. "[I]f the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 171 (4th Cir. 2006). Notably, a mark need not describe each feature of the goods to be considered descriptive; instead, a mark is descriptive if it "merely describe[s] a function, use, characteristic, size, or intended purpose of the product." Sara Lee Corp., 81 F.3d at 464.

By contrast, "[i]f the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." Brooklyn Brewery Corp. v. Brooklyn Brew Shop, 17 F.4th 129, 146 (Fed. Cir. 2021) (upholding district court finding that BROOKLYN BREW SHOP was not descriptive because "BREW SHOP does not conjure up an image of a 'beer-making kit' specifically"). "Suggestive marks connote, without describing, some quality, ingredient, or characteristic of the product. . . . [A] person without actual knowledge would have difficulty in ascertaining the nature of the products that the marks represent." Sara Lee Corp., 81 F.3d at 464.

In determining the characterization of a mark, courts must consider the mark as a whole. Booking.com B.V. v. Matal, 278 F. Supp. 3d 891, 903–04 (E.D. Va 2017) ("[A mark] should be considered in its entirety."). Thus, courts may find multi-word marks suggestive even when those words would be generic or descriptive in a different context or if used individually. See, e.g., Synergistic Int'l, 470 F.3d at 172 (holding that GLASS DOCTOR is suggestive for glass

repair because it takes "some imagination" to deduce that "healing applies to the repair or installation of glass"). "[T]he question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods." Booking.com B.V., 278 F. Supp. 3d at 901, 903 (citing Octocom Sys., Inc. v. Houston Comput. Servs., Inc., 918 F.2d 937, 942 (Fed. Cir. 1990)).

As the party opposing registration, defendant bears the burden of proving that Apple's marks are not suggestive. See B & B Hardware, 575 U.S. at 144 ("The party opposing registration bears the burden of proof."). This is true even though Apple is the plaintiff in this litigation. See, e.g., Apple Inc. v. Cao, 2022 WL 18781189, at *5 (E.D. Va. Jan. 14, 2022) (identifying the defendant opposing registration as the party that bears the burden).

2. Suggestiveness of the Marks

Plaintiff argues that its marks are suggestive for six reasons, and that defendant has not carried its burden of proving that the marks are descriptive. These six reasons are interrelated and will therefore be presented together before analyzing defendant's responses to them.

Plaintiff first argues that dictionaries do not contain the phrases "reality composer" or "reality converter," or connect those words together in any way. [Dkt. No. 44] at 28; Pl. SUF ¶ 19, 77–78. The individual definitions of the words do not make sense together, and the combined terms do not conjure images of any product. Pl. SUF ¶ 78; [Dkt. No. 44] at 28. Second, plaintiff argues that the lack of third-party usage shows that REALITY COMPOSER and REALITY CONVERTER are suggestive, not descriptive. As defendant has stipulated, no one (press, competitors, consumers, or otherwise) other than Apple uses the phrases "reality composer" or "reality converter" as brand names or descriptive terms. Joint Stip. ¶ 28; Pl. SUF ¶ 16. Third, plaintiff points to the survey evidence of its expert Professor Simonson, which

showed that software developers did not describe Apple's product using the terms "reality composer/converter," nor did they choose to name the products accordingly when presented with a list of possible names.  Plaintiff's fourth and fifth arguments overlap: Apple's consistent use of its marks as brands, not descriptions, shows that the marks are suggestive, as does the lack of third-party usage.  This argument is bolstered by Professor Humphreys's expert report, which showed Apple's "consistent capitalization [of the marks], use in connection with logos, and use in headings or otherwise set apart from other text." [Dkt. No. 55-1] at 27.  Professor Humphreys further found that no competitors use the marks or variations thereof to identify their competing products and that press usage of the terms [also] illustrates that the terms are used as branded terms associated with Apple's [marks]." Id. at 70.  Plaintiff also points to defendant's witnesses and marketing materials, which show that "neither 'composer' nor 'reality' independently describe Apple's product," nor are these words used in the industry to describe competing products. [Dkt. No. 44] at 30.  Finally, plaintiff argues that its unrebutted experts each found that REALITY COMPOSER and REALITY CONVERTER are not understood as descriptors.  SUF ¶¶ 73–94, 104–11.

Defendant counters that plaintiff—by its corporate representative Thomas R. La Perle ("La Perle"), a Senior Director at Apple who heads Apple's Trademark and Copyright Group— conceded before the TTAB that "REALITY" is descriptive and has disclaimed rights to the word "reality" standing alone when filing plaintiff's applications.  [Dkt. No. 48-2] at 50, 56, 220.  Defendant also argues that the relevant consumer base is not general users of American English, or even average English speakers in the "tech" space; rather, the relevant consumer base is software developers, specifically developers of three-dimensional software. [Dkt. No. 65] at 16– 17.  For example, La Perle testified before the TTAB that REALITY COMPOSER is "marketed

through developer channels and aimed exclusively at a developer audience." [Dkt. No. 48-2] at 56. Simonson's survey results, therefore, cannot be attributed to the relevant users of Apple's products. In support of its assertion that the descriptive nature of REALITY COMPOSER "would be immediately recognized by the pertinent software developer working in the field of augmented reality," defendant points to the evidence in the record showing screenshots of Apple's websites describing its products using the words "compose," "composition," and "convert." See, e.g., [Dkt. No. 48-2] at 79–81, 131, 135, 150, 175.

Defendant also offers one article from Marxent 3D Commerce by its Chief Marketing Officer, Sonia Schechter, in which she explains that a software program called TouchDesigner can be used to "[c]ompose and render images and display them in 8-bit or 10-bit color," showing that the word "compose" is used descriptively. Id. at 193. Finally, defendant offers Merriam-Webster dictionary definitions of "composer" ("one who composes") and "compose" ("1. To form by putting together" and "2. To create by mental or artistic labor"), and the testimony before the TTAB by Kuban Altan, defendant's Vice President of Research and Development, in which he stated that the "term 'composer' in the video production industry is also used to describe a person with the job of composing graphics and visual effects. . . . For example, a job posting appeared on the internet website Freelancer.com looking for an 'After Effects Composer.'" Id. at 19. Altogether, defendant argues that "[w]hen combining the words together, REALITY COMPOSER, the mark[] describe[s] the function of composing AR content. A software developer familiar with AR software would immediately understand the function of the software." [Dkt. No. 48] at 19.

In spite of defendant's argument and minimal new evidence, a de novo review of the expanded record in this civil action leads to the opposite conclusion reached by the TTAB.

Although the term "Reality" is likely descriptive of augmented reality software to the consumers to whom Apple advertises this product, the term stretches beyond its descriptive meaning when combined with "composer" and "converter." Plaintiff's unrebutted expert linguist, Professor Carter, concluded that "ordinary speakers of American English—including those with backgrounds in science and technology—will not readily understand how these terms relate to Apple's product[s] or view these terms as describing qualities or properties of these products" because that relationship requires "inferences" that are "metaphorical in nature." [Dkt. No. 54-1] at 6. Professor Carter also found after examining dictionaries and the Corpus of Contemporary American English, a linguistic database compiling a wide array of print and online sources, that there is no semantic link[6] between "reality" and "composer" or "converter" such that consumers would consider the marks descriptive. Id. at 8–9.

As to third-party usage, plaintiff correctly argues that if the marks were descriptive, one would expect third parties to use them.[7] See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1533 (4th Cir. 1984) ("Whether the dominant term is suggestive or merely descriptive is most easily resolved by considering whether it is a word in common use, and one often employed in describing a product."). Professor Humphreys concluded that out of eight third-party entities that market competing products, none use any variation of "reality composer" or "reality converter" as names for, or to describe, their software tools. [Dkt. No. 55-1] at 33. Similarly, her analysis of 6,465 Reddit posts, 282 Stack Overflow posts, and 1,251 Google Play Store product reviews related to software development or AR topics revealed zero uses of reality

---

[6] Examples of words that are semantically linked include "cigarette lighter" and "egg beater." Id. ¶ 76.

[7] Plaintiff also points out that defendant argued in prosecuting its own marks that lack of usage was a sign of non-descriptiveness. [Dkt. Nos. 44-21 ¶ 38, 44-76].

composer/converter, and almost no uses of the terms in close proximity, other than Reddit posts from users referring to Apple's branded products. Id. at 45–51. Finally, Professor Humphreys found that "press usage of the terms [also] illustrates that the terms are used as branded terms associated with Apple's [marks]." Id. at 70.

Particularly compelling is Professor Simonson's survey evidence showing that plaintiff's marks are not descriptive. [Dkt. No. 44] at 29. Professor Simonson surveyed 561 software developers, asking them open- and closed-ended questions[8] about whether they understood "reality composer" and "reality converter" as descriptive terms. Pl. SUF ¶ 62–63. In response to the open-ended questions, "not a single respondent described the tested products using the phrases REALITY COMPOSER or REALITY CONVERTER." Id. ¶ 66. For the closed-ended questions, those two phrases were the least likely to be selected to describe the goods at issue among all the phrases presented. Id. ¶ 69. Professor Simonson concluded that the survey unambiguously showed that plaintiff's marks were not descriptive. Id.

Finally, plaintiff's software development expert, Kitchen, concluded that, based on his 35 years of experience running software development companies and his analysis of the SWEBOK Guide to Software Engineering (a respected authority in the field of software engineering), "[s]oftware developers do not use the phrase 'reality composer,'" the term "composer" is "not customarily used or understood to describe software programs or people who write software

---

[8] Open-ended questions included: "How would you describe 'a downloadable computer software used in developing other software applications'?" [Dkt. No. 53-1] at 15. Answers included: "It is downloadable computer software used in editing, customizing, and producing three-dimensional effects." Id. at 17. Closed-ended questions included: "Which, if any, of the following terms might you use to describe 'a downloadable computer software used in developing other software applications'? *(Select all that apply)*," followed by a list of ten choices. Id. The two most common responses were "Software development tool" (88% of respondents) and "Software builder" ("63% of respondents). By contrast, "Reality composer" and "Reality converter" each were selected by only 3% of respondents. Id. at 18.

14

applications," and the word "compose" is "not the normal and customary way in which software and/or app developers refer to writing computer code." [Dkt. No. 56-1] at 7. Similarly, Kitchen opined that "the combined term 'reality converter' does not describe any product given the vague nature of the word 'reality'" without a preceding modifier, such as "virtual" or "augmented." Id. at 8.

Plaintiff's unanimous expert reports are unrebutted by defendant, which did not produce its own experts but only disputed the relevance and accuracy of a portion of plaintiff's experts' findings. As discussed above, plaintiff's experts describe how Apple's marks are used in ways that are not descriptive (e.g., as a brand name), and no competitor uses these phrases or variations of them to describe their competing products. In sum, the evidence in this record establishes that Apple's marks are suggestive and therefore registrable.

3. Secondary Meaning

In addition to the marks being suggestive, an even stronger reason to grant plaintiff's motion is that the evidence shows that these two marks have developed secondary meaning. Even if a mark is descriptive, it can be registered as a trademark if it has acquired secondary meaning, which exists when "a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 125 (4th Cir. 1990). An applicant need not establish nationwide recognition; it is sufficient to establish secondary meaning among its consumer base. See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1086 (7th Cir. 1988). To determine whether secondary meaning is established, courts consider a non-exhaustive list of factors—none of which is necessarily dispositive—including (1) advertising expenditures; (2) consumer studies; (3) sales; (4) unsolicited media coverage; (5) attempts to plagiarize the mark; and (6) the length and

exclusivity of use. Perini, 915 F.2d at 125. Moreover, five years of substantially exclusive and continuous use of a mark is prima facie evidence of secondary meaning for purposes of registration. 15 U.S.C. § 1052(f); Cao, 2022 WL 18781189, at *5.

Plaintiff argues in this litigation (but did not argue before the TTAB)[9] that both marks have acquired secondary meaning. In support, plaintiff points to the parties' joint stipulation of uncontested facts, which states that plaintiff's REALITY COMPOSER application was "based on use in commerce since June 3, 2019," and its REALITY CONVERTER application was "based on use in commerce since January 13, 2020." At no point in the TTAB proceedings or in this litigation has any evidence been presented challenging Apple's claim that it has continuously used these marks since those dates, and the parties have further stipulated that "Apple's competitors do not use the composite terms 'reality composer' or 'reality converter.'" These stipulations constitute sufficient and unrebutted evidence that REALITY COMPOSER has been in substantially exclusive and continuous use for five consecutive years as of June 3, 2024, which date was four months before plaintiff filed its motion for summary judgment, and REALITY CONVERTER has been in similar use for five years as of January 13, 2025. As plaintiff correctly argues, five years of substantially exclusive and continuous use of a mark is prima facie evidence of secondary meaning for purposes of registration. See 15 U.S.C. § 1052(f); Cao, 2022 WL 18781189, at *5.

Besides this prima facie evidence, plaintiff has produced substantial and essentially unrebutted evidence corroborating its exclusive and continuous use of its marks for the last five years. First, plaintiff has produced extensive evidence of its advertising efforts through its

---

[9] In its opinion, the TTAB noted that the question of secondary meaning "is not before us as Applicant does not seek registration under Section 2(f), 15 U.S.C. § 2(f). Applicant seeks to register the combined terms as inherently distinctive." [Dkt. No. 48-2] at 87.

websites, videos, press releases, and educational materials, resulting in "millions of impressions" for both marks. [Dkt. No. 44] at 13, 33; [Dkt. Nos. 44-3–7, 44-9, 45-17, 47-9]. Second, plaintiff has produced sales data showing that Reality Composer has been downloaded as a stand-alone application millions of times and Reality Converter has been downloaded tens of thousands of times,[10] which supports the finding of secondary meaning. See, e.g., Wash. Speakers Bureau, Inc. v. Leading Auths., Inc., 33 F. Supp. 2d 488, 496 (E.D. Va. 1999) (listing sales success as an important factor and finding that 4,000 speeches per year was indicative of secondary meaning). Third, plaintiff has produced dozens of articles from media outlets including CNET, CNN, and Forbes covering Reality Composer, see [Dkt. Nos. 50-5–7], and several from tech-focused publications covering Reality Converter, see [Dkt. No. 51-4].

Most persuasively, plaintiff's expert, Professor Humphreys, gathered vast amounts of media, consumer, and other internet user data showing that consumers associate REALITY COMPOSER and REALITY CONVERTER uniquely with Apple. Pl. SUF ¶¶ 95–103. As for media usage, Humphreys searched newspapers in the Proquest U.S. Newstream database, a database of all major U.S. newspapers, as well as magazines, online articles and/or wire feed items published since June 1, 2019, three days before the launch of the Reality Composer application, which "resulted in 65 unique, English-language articles mentioning either 'reality composer' or 'reality converter.'" [Dkt. No. 55-1] at 67–68. Sixty-one of these articles also contained the word "apple," and of the four that did not, one was about Apple's products but did not mention the company's name, and the remaining three articles were "false positives" due to sentence construction (e.g., "[…] reality. Composer […]."). Id. at 68. Furthermore, all but one

---

[10] The specific numbers of downloads were filed under seal. [Dkt. No. 57] at 34; [Dkt. No. 57-2] at 2.

of the 65 articles (excluding the false positives) "used the terms with both words capitalized, indicating branded usage. The results of this Proquest news search illustrate that the terms 'reality composer' and 'reality converter' are nearly always used as branded terms in association with Apple by the media." Id. Humphreys's search of the Google News's article hosting platform yielded similar results showing predominantly branded use of the terms "reality composer" and "reality converter." Id. at 68–70.

To assess whether consumers associate REALITY COMPOSER and REALITY CONVERTER with Apple, Humphreys collected posts from relevant internet forums and platforms. Id. at 60. From Reddit, Humphreys "identified 866 posts that contain either 'reality composer,' 'reality converter, or both across all subreddits," and found that "98% of posts containing either 'reality composer' and/or 'reality converter' referenced a distinct brand and/or product." Id. Moreover, 97% of the posts "included a link to the Apple brand, either explicitly in the post or from the context in which the post was made." Id. Similarly, in another online discussion board, Stack Overflow, 100% of the time the at-issue phrases were used to refer to AR technology, "the posts contained a direct reference to Apple's Reality Composer and/or Reality Converter application." Id. at 48. Humphreys concluded that:

> [a]cross general forums (Reddit), developer specific platforms (Stack Overflow), and consumer product reviews, the phrases "reality composer," "reality converter," and variations thereof are rarely used to describe the functionality of AR software tools. Instead, consumers on forums and in product reviews overwhelmingly use the terms "reality composer" and "reality converter" in a branded way to refer to Apple's products. This available consumer search data indicates that "reality composer" is used in conjunction with Apple and other Apple sub-brands, and the top results for searches of both "reality composer" and "reality converter" are about the branded Apple products.

Id. at 72. All this evidence strongly supports finding that Apple's marks have acquired secondary meaning.

Defendant has not offered any evidence to challenge plaintiff's evidence summarized above. Instead, defendant simply argues that plaintiff "cannot meet its high burden to establish the marks have acquired distinctiveness prior to the critical dates which was the close of the respective TTAB testimonial trial periods." [Dkt. No. 65] at 5. Defendant argues that the Court should disregard evidence that post-dates the TTAB testimonial trial period—January 13, 2022 for REALITY COMPOSER and June 3, 2022 for REALITY CONVERTER—and conclude that the remaining evidence is insufficient to find that Apple's marks have acquired secondary meaning. Id. at 20–21.

Defendant's argument fails to acknowledge the de novo nature of this lawsuit. De novo review properly includes consideration of newly submitted evidence that was not before the TTAB. Therefore, the Court may "take into account facts arising after the mark was adopted and after the filing of the application, up to the closing of the [evidentiary] period," which in this civil action was October 9, 2024, the date summary judgment motions were filed. See Mini Melts, Inc. v. Reckitt Benckiser LLC, 118 U.S.P.Q.2d 1464, at *18 (T.T.A.B. 2016). Plaintiff correctly argues that multiple cases in this district support the proposition that in a § 1071(b)(1) action, evidence outside the TTAB proceeding may be considered. See, e.g., Cao, 2022 WL 18781189, at *8 (relying on sales data post-dating the close of the TTAB testimony period to resolve a default judgment motion); Booking.com B.V., 278 F. Supp. 3d at 919–21 (relying on data from 2016 in appeal from TTAB matter for which briefing ended in 2015). Accordingly, the Court has considered all the evidence entered in this proceeding up to October 9, 2024.

In addition to the unrebutted prima facie evidence for both marks based on their continuous use in commerce, because defendant concedes that no competitors use these two marks and that there is no likelihood of confusion between the two marks and defendant's marks,

the Court finds that the evidence in the record creates no genuine dispute that plaintiff's marks have acquired secondary meaning. Plaintiff's additional evidence of widespread press coverage, industry awareness of the marks, consistent and pervasive promotional materials, and the expert reports all corroborate the prima facie evidence of continuous use for five years. As all of this evidence is essentially unrebutted, the Court finds that Apple's marks are both suggestive and have acquired secondary meaning and are therefore registrable.

### III. CONCLUSION

For all the reasons discussed above, defendant's Motion for Summary Judgment [Dkt. No. 46] will be denied and plaintiff's Motion for Summary Judgment [Dkt. No. 43] will be granted by an Order that will reverse the TTAB decision and direct the Director of the USPTO to register REALITY COMPOSER and REALITY CONVERTER.

Entered this __1st__ day of August, 2025.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge